IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**TRAVIS PUTNAM,**                          08-CV-202-BR

      **Plaintiff,**

                               OPINION AND ORDER

v.

**GARTH GULICK and JOHN VARGO,**

      **Defendants.**


**DONALD D. DARTT**
521 S.W. Clay St.
Portland, OR 97201
(503) 221-1907

      Attorney for Plaintiff

**JOHN KROGER**
Attorney General
**KRISTIN A. WINGES**
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301
(503) 947-4700

      Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#13). For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

Plaintiff Travis Putnam became a quadriplegic after an accident in 2002. Plaintiff was an inmate at Oregon State Penitentiary (OSP) from January 12, 2006, through April 4, 2006; at the Snake River Correctional Institution (SRCI) from April 4, 2006, through February 7, 2007; and from February 8, 2007, through February 16, 2007, at OSP. On February 16, 2007, Plaintiff was paroled to Pacific Health and Rehabilitation.

Defendant Garth Gulick is a doctor employed by the State of Oregon. Dr. Gulick worked as a doctor at SRCI at all relevant times. Defendant John Vargo is a doctor employed by the State of Oregon. Dr. Vargo worked as a doctor at OSP at all relevant times.

On February 19, 2008, Plaintiff filed an action in this Court alleging Defendants violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution by failing to provide Plaintiff with adequate medical care during Plaintiff's incarceration at OSP and SRCI.

2 - OPINION AND ORDER

On January 30, 2009, Defendants filed a Motion for Summary Judgment. On February 18, 2009, Plaintiff notified the Court that he did not intend to file a response to Defendants' Motion. Accordingly, the only evidence in the record for the Court to consider is the material Defendants filed in support of their Motion for Summary Judgment.

## **STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence

as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## **DISCUSSION**

As noted, Plaintiff asserts Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with adequate medical care during his incarceration.

4 - OPINION AND ORDER

In his Complaint, Plaintiff alleges he developed skin abrasions as a result of spending time in his wheelchair and lying down, and these abrasions developed into large open sores on his buttocks and heels.  Plaintiff alleges Dr. Gulick refused to properly examine and to treat Plaintiff's sores.  In addition, Plaintiff alleges he was "delirious and in extreme pain as a result of the open sores on his backside and heels" when he was transferred to OSP, but Dr. Vargo refused to examine or to treat Plaintiff.

Defendants, however, move for summary judgment on the ground that they were not deliberately indifferent to Plaintiff's Eighth Amendment rights, and, in any event, they are entitled to qualified immunity.

## I.  Deliberate indifference standard.

Deliberate indifference to serious medical needs is a cognizable claim for violation of the Eighth Amendment proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  *See also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  A serious need for medical treatment exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)(citing *Gamble*, 429

5 - OPINION AND ORDER

U.S. at 104).  *See also Actkinson v. Vargo*, 284 Fed. Appx. 469, 472 (9th Cir. 2008)(same).  Examples of instances when a prisoner has a serious need for medical treatment are when a prisoner has an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the prisoner has a medical condition that significantly affects his daily activities, or the prisoner has chronic and substantial pain.  *McGuckin v. Smith*, 974 F.2d at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990), and *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989)).

Before he can establish deliberate indifference on the part of prison officials, a plaintiff must show:  (1) prison officials purposefully ignored or failed to respond to the prisoner's pain or possible medical need and (2) the denial of medical care to the plaintiff by prison officials was harmful.  *Jett*, 439 F.3d at 1096.  *See also McGuckin*, 974 F.2d at 1060.  Deliberate indifference may be established by showing that prison officials deny, delay, or intentionally interfere with medical treatment or it may be demonstrated by the way prison officials provide medical care.  *Jett*, 439 F.3d at 1096.  *See also McGuckin*, 974 F.2d at 1062 (a delay of seven months in providing medical care during which time the plaintiff's medical condition was left virtually untreated and the plaintiff was forced to endure "unnecessary pain" is sufficient to present a colorable § 1983

6 - OPINION AND ORDER

claim); *Hunt*, 865 F.2d at 201 (it could be reasonably concluded a delay of three months in providing dentures to an inmate suffering serious dental problems was more than an isolated occurrence of neglect and that the delay was deliberate).

"Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)(citation omitted). *See also Williams v. Ayers*, 217 Fed. Appx. 647 (9th Cir. 2007)(same). In addition, a mere difference of opinion between a prisoner and prison medical authorities regarding treatment does not give rise to a claim under § 1983 for inadequate medical treatment. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). *See also Hightower v. Schwarzenegger*, No. 07-16522, 2009 WL 119792, *1 (9th Cir. Jan. 15, 2009)(same).

**II.  Defendants did not violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.**

The undisputed evidentiary record reflects Plaintiff received consistent and continuous monitoring and treatment while at SRCI and OSP. For example, on his arrival at OSP on January 12, 2006, Plaintiff was examined by Dr. Vargo and housed in the infirmary. OSP medical staff prescribed an alternating pressure mattress, range of motion exercises, and medication. Plaintiff was seen by OSP medical staff, including Dr. Vargo, six times in January 2006, three times in February 2006, two times in March

7 - OPINION AND ORDER

2006, and once in April 2006 before he was transferred to SRCI on April 4, 2006.  The record does not reflect Plaintiff had any skin rashes or sores during his time at OSP from January 2006 through April 2006.  His primary complaint was, in fact, that Vicodin did not sufficiently control the pain he experienced from muscle spasms caused by his quadriplegia.

On April 4, 2006, Plaintiff was transferred to SRCI.  On his arrival at SRCI, Plaintiff was examined by SRCI medical staff.  Although treatment chart notes mention Plaintiff's concern about past skin breakdowns and lesions, Plaintiff did not have any skin sores or lesions on arrival.  In addition, Plaintiff stated his main concern was pain control.  Progress notes reflect OSP medical staff prescribed a 24-hour live-in helper for Plaintiff, which he received on April 10, 2006.  On June 14, 2006, Plaintiff reported he could "feel [his] coccyx breaking down."  Plaintiff also reported he had experienced decubitus ulcers (pressure sores) in the past, and he was concerned about further skin breakdown.  Plaintiff was thoroughly examined.  Even though no pressure sores were found, medical staff cleaned the area, covered it with Duoderm[1] for protection and to prevent breakdown, and scheduled Plaintiff for an x-ray and follow-up examination.  Plaintiff was seen by Dr. Schantzen on June 28, 2006, who noted

---

[1] In her Declaration, Barbara Ries, R.N., explains Duroderm is a "hydrocolloid dressing that allows the wound to maintain appropriate moisture for an optimum healing environment."

8 - OPINION AND ORDER

Plaintiff's concern about skin breakdown on his coccyx was resolved.  Plaintiff, however, had an abrasion on his right thigh and a fungal rash in his groin area.  Medical staff cleaned the abrasion and covered it with Duoderm and prescribed antifungal cream for Plaintiff's rash.  Medical staff examined and redressed Plaintiff's thigh abrasion on July 3 and July 8, 2006.  On July 25, 2006, Plaintiff was seen again by Dr. Schantzen, who reported Plaintiff's skin abrasion was healing, Plaintiff did not have any lesions on his feet, and Plaintiff reported he could "feel his buttocks + denies any impending wounds."  On September 28, 2006, Dr. Schantzen reported Plaintiff's thigh abrasion was completely healed.  Plaintiff was seen by SRCI medical staff numerous times in August, September, and October 2006 and did not have skin sores or ulcers.  On November 16, 2006, Dr. Gulick examined Plaintiff and noted he did not find any decubitus ulcers.  Plaintiff was seen numerous times by SRCI medical staff between November 2006 and his transfer to OSP in February 2007.  Even though the record reflects a number of progress notes related to a series of fungal infections in Plaintiff's groin area, there is not any indication that Plaintiff had decubitus ulcers or skin sores.

    On February 8, 2007, Plaintiff was transferred back to OSP. OSP medical staff conducted an examination of Plaintiff on his arrival, but they did not find any decubitus ulcers or sores.

9 - OPINION AND ORDER

Plaintiff was housed in the infirmary and constantly monitored during his eight-day stay at OSP before he was paroled. On February 14, 2007, OSP medical staff noted Plaintiff would be paroled on February 16, 2007, to Pacific Health and Rehabilitation. At 8:00 p.m. on February 15, 2007, OSP medical staff examined Plaintiff and noted he had two "small open areas" on his buttocks and one "large area on his right cheek" as well as blisters on his left heel. Staff cleaned Plaintiff's sores, covered them with Duoderm, and directed orderlies to turn Plaintiff once an hour and to keep him off of his back.

At 7:00 a.m. on February 16, 2007, Plaintiff was paroled to Pacific Health and Rehabilitation Center. Pacific Health's records reflect Plaintiff arrived at 9:00 a.m. and was alert and responsive. Pacific Health medical staff examined Plaintiff at 1:30 p.m., noted his sores, and treated them. The record reflects Plaintiff was alert and responsive at 5:00 p.m. At 11:00 p.m., Plaintiff became febrile. Pacific Health changed Plaintiff's wound dressings and transported him to St. Vincent Hospital.

The record reflects Plaintiff was diagnosed with a urinary tract infection and decubitus ulcers. A culture of Plaintiff's wounds established they were not infected, but Plaintiff underwent surgical debridement of the ulcers on February 22, 2007.

10 - OPINION AND ORDER

R.N. Ries testifies in her Declaration that "the length of time between [Plaintiff's] discharge and parole from OSP and the time he entered the hospital would be sufficient for [his] wounds to develop" because "[s]kin breakdown can occur within a matter of hours if blood flow to an area is interrupted and the issues then become damaged."  Ries Decl. at ¶¶ 13, 14.  R.N. Ries further testifies Plaintiff "received appropriate wound care during the time of his incarceration."  According to R.N. Ries, even though Plaintiff's "condition deteriorated while at the rehab facility, it does not appear to be related to any care he received while in ODOC custody."  *Id*.

The Court concludes on this undisputed record that Plaintiff has not established Defendants ignored or failed to respond to Plaintiff's pain or possible medical needs or that they denied, delayed, or intentionally interfered with Plaintiff's medical treatment.  The record reflects prison staff examined and evaluated Plaintiff often and promptly treated Plaintiff's medical conditions.  Thus, the Court concludes Plaintiff has not established Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.

Accordingly, the Court grants Defendants' Motion for Summary Judgment.

11 - OPINION AND ORDER

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#13) and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 7th day of April, 2009.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

12 - OPINION AND ORDER